IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

5G CORPORATION, INC. and
AMELIA VAUGHN,

    Plaintiffs,

v.                                                                                                  Case No. 2:21-cv-2350-MSN-cgc

SPRINT COMMUNICATIONS COMPANY, L.P.;
APPLE, INC.;
GOOGLE LLC;
MICROSOFT CORPORATION; and
FACEBOOK PAYMENTS, INC.,

    Defendants.

---

**ORDER GRANTING DEFENDANT MICROSOFT CORPORATION'S MOTION TO DISMISS (ECF NO. 17);**

**ORDER GRANTING DEFENDANTS SPRINT COMMUNICATIONS COMPANY, L.P. AND APPLE INC.'S MOTION TO DISMISS (ECF NO. 20);**

**ORDER GRANTING DEFENDANT FACEBOOK PAYMENTS INC.'S MOTION TO DISMISS (ECF NO. 21);**

**AND**

**ORDER GRANTING DEFENDANT GOOGLE LLC'S MOTION TO DISMISS (ECF NO. 22)**

---

Before the Court are the following four motions: (1) Defendant Microsoft Corporation's Motion to Dismiss filed July 2, 2021 (ECF No. 17); (2) Defendants Sprint Communications Company, L.P. and Apple Inc.'s Motion to Dismiss filed July 2, 2021 (ECF No. 20); (3) Defendant Facebook Payments Inc.'s Motion to Dismiss filed July 2, 2021 (ECF No. 21); and (4) Defendant Google LLC's Motion to Dismiss filed July 9, 2021 (ECF No. 22) (collectively, the "Motions").

Plaintiffs filed a consolidated response to the Motions, but they did not specifically respond to Defendant Microsoft Corporation's Motion. (ECF No. 25.) Each Defendant filed a reply in support of its Motion. (*See* ECF Nos. 26, 27, 28, & 29.) For the reasons set forth below, the Motions are **GRANTED** in their entirety.

## BACKGROUND

On April 16, 2021, Amelia Vaughn ("Plaintiff Vaughn") and 5G Corporation, Inc. ("Plaintiff 5G") filed a Complaint in Shelby County Chancery Court against Sprint Communications Company, L.P. ("Defendant Sprint"), Apple, Inc. ("Defendant Apple"), Google, LLC ("Defendant Google"), Microsoft Corporation ("Defendant Microsoft"), and Facebook Payments, Inc. ("Defendant Facebook Payments"). Defendants Sprint and Apple removed the matter to this Court on May 26, 2021 with the consent of Defendants Google, Microsoft, and Facebook Payments.

According to the Complaint, Plaintiff Vaughn is a "principal" of Plaintiff 5G, which, among other ventures, was and is engaged in the business of "technology acquisition and distribution." (ECF No. 1-1 at PageID 10.) Prior to and during 2018, Plaintiffs had contracts on smart phones with Defendant Sprint, and Plaintiff Vaughn and her family used iPhones designed and sold by Defendant Apple. (*Id.* at PageID 13.) Plaintiffs allege they stored "vast personal medical and private information" on their iPhones, including "engineering and 5G research" related to a "cell phone network at very high speeds" as well as "proprietary information about deodorant, sports powder, cosmetics, and skin care formula that Plaintiff was intending to sell and market." (*Id.* at PageID 13.)

Over an unspecified period of time—"and as recently as 2018"—Plaintiff Vaughn and her family experienced numerous crashes of their cell phones that resulted in the loss of all data

contained on at least two phones. (*Id.* at PageID 13.) Plaintiffs sought to retrieve the lost data, but they were advised in 2018 that the "information was lost, could not be retrieved, or would require the pre-payment of thousands of dollars in expenses to be recreated or recaptured." (*Id.* at PageID 14.) Plaintiffs do not specify which Defendant, if any, advised them that their data could not be recreated or recaptured without spending thousands of dollars. However, Plaintiffs allege that the data related to a 5G cell phone network was converted by Defendants. (*Id.* at PageID 14.) Plaintiffs also allege that prior to 2018, "a former representative" of Defendant Google began to market and sell a deodorant formula that was "strikingly similar" to a deodorant formula that was included in the data on the Plaintiffs' cell phones that was lost in 2018. (*Id.* at PageID 14.) Plaintiffs further allege that "at some time prior to 2018," every phone they "have accessed, used or kept data upon have had indicia that such were being spied upon by Defendants." (*Id.* at PageID 14.) Plaintiffs allege Defendants "were working directly or on behalf of . . . each other." (*Id.* at PageID 15.) Plaintiffs allege Defendants have "converted or stolen" their data for Defendants' own use and benefit. (*Id.* at PageID 15.)

Plaintiffs allege that in 2015, Defendants began flooding their "online presence with inquiries," and that in 2018, Plaintiffs began to receive racial threats and intimidation by email. (*Id.* at PageID 14.)

Plaintiffs also assert that Defendants have committed invasion of privacy in violation of Tenn. Code. Ann. § 39-13-607. (*Id.* at PageID 16.) Further, that Defendants have committed an intentional infliction of emotional distress against Plaintiffs and have assaulted Plaintiff Vaughn and her family, leaving her "fearful that her every move online or by cell phone is being watched, preyed upon, and/or downloaded and/or uploaded." (*Id.* at PageID 17.)

In addition, Plaintiffs allege Defendants discriminated against them by denying them advertising and marketing opportunities and refusing to "show her logo on their controlled websites" on the basis of Plaintiff Vaughn's race, African American, or because Plaintiff 5G is a 100% African-American owned company. (*Id.* at PageID 17–18.) Plaintiffs allege such discrimination is in violation of 42 U.S.C. § 1981. (*Id.* at PageID 18.)

Finally, Plaintiffs allege Defendants have violated Section One of the Sherman Antitrust Act and that "Defendants have acted in combination or conspiracy in that the only plausible and logical explanation for the wrong detailed [in the Complaint] are actions that arise from the theft, conversion, and/or dissemination" of Plaintiffs' technology and business information that was stored on their iPhones. (*Id.* at PageID 18–19.)

Other than in the caption, the Complaint does not specifically label Plaintiffs' causes of action. Based on the caption and the allegations in the Complaint, it appears that Plaintiffs' Complaint asserts the following causes of action: (1) conversion of data and intellectual property related to (a) a 5G cell phone network, and (b) a deodorant formula; (2) invasion of privacy pursuant to Tenn. Code. Ann. § 39-13-607; (3) intentional infliction of emotional distress; (4) assault; (5) race discrimination under 42 U.S.C. § 1981; and (6) violation of Section One of the Sherman Act.

## **JURISDICTION & CHOICE OF LAW**

The Court has federal question jurisdiction. Under 28 U.S.C. § 1331, district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiffs assert claims against Defendants pursuant to 42 U.S.C. § 1981 and the Sherman Antitrust Act, codified at 15 U.S.C. §§ 1–38. (ECF No. 1-1.) Those claims arise under the laws of the United States.

The Court may exercise supplemental jurisdiction over Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(a). Those claims derive from a "common nucleus of operative fact" with Plaintiffs' federal claims against Defendants. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 588 (6th Cir. 2016); *see also* 28 U.S.C. § 1367(a).

Alternatively, the Court has diversity jurisdiction under 28 U.S.C. § 1332. Federal district courts have original jurisdiction of all civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1).

Plaintiff Vaughn is a citizen of Tennessee and Plaintiff 5G is a Tennessee corporation with its principal place of business in Memphis, Tennessee. For diversity purposes, Defendant Sprint is a citizen of Kansas and Washington; Defendant Apple is a citizen of California; Defendant Google is a citizen of Delaware and California; Defendant Microsoft is a citizen of Washington; and Defendant Facebook Payments is a citizen of Florida and California. The parties are completely diverse, and the amount in controversy exceeds $75,000. (*See* ECF Nos. 1 & 1-1.)

State substantive law applies to state law claims before a federal court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Where there is no dispute that a certain state's substantive law applies, the Court will not conduct a choice-of-law analysis *sua sponte*. *See GBJ Corp. v. E. Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998). The parties assumed in their Motions, Response, Replies, and in their respective memoranda, that Tennessee substantive law applies to Plaintiffs' state law claims and have made their arguments accordingly. Thus, the Court will apply Tennessee substantive law. In applying Tennessee substantive law, this Court is "bound by controlling decisions" of the Tennessee Supreme Court, "and in the absence of a decision addressing the issue,

5

must predict how that court would rule by looking to 'all available data.'" *Fox v. Amazon.com, Inc.*, 930 F.3d 415, 422 (6th Cir. 2019) (quoting *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012)).

## **STANDARD OF REVIEW**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Using this framework, the court determines whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A complaint need not contain detailed factual allegations; however, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). If a court decides in light of its judicial experience and common sense, that the claim is not plausible, the case may be dismissed at the pleading stage. *Iqbal*, 556 U.S. at 679. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 556.

## DISCUSSION

In the Complaint, Plaintiffs makes their allegations generally against all Defendants. The Court therefore addresses each of Plaintiffs' claims below as to all Defendants.

**A.    Claims for Invasion of Privacy, Intentional Infliction of Emotional Distress, and Assault**

Defendants argue that each of these claims is barred by the statute of limitations (*see* ECF No. 17-1 at PageID 76; ECF No. 20-1 at PageID 94–95; ECF No. 21-1 at PageID 111–14; ECF No. 22-1 at PageID 125), and this Court agrees.

Claims for invasion of privacy, intentional infliction of emotional distress, and assault are subject to Tennessee's one-year statute of limitations. *See, e.g., Leach v. Taylor*, 124 S.W.3d 87, 91 (Tenn. 2004) (citing Tenn. Code Ann. § 28-3-104) (intentional infliction of emotional distress); *Jackson v. Falcon Transp. Co.*, No. 3:08-0771, 2011 WL 1627319, at *3 (M.D. Tenn. Apr. 29, 2011), *R&R adopted*, No. 3-08-0771, 2011 WL 1930661 (M.D. Tenn. May 19, 2011) (citing Tenn. Code Ann. § 28-3-104) (invasion of privacy), *Chase v. White*, 2016 WL 7210155, at *5 (M.D. Tenn. Dec. 13, 2016) (citing Tenn. Code Ann. § 28-3-104) (assault). Plaintiffs do not provide specific dates for most of the factual allegations underlying these claims, but the most recent date of the conduct described by Plaintiffs was 2018. (*See* ECF No. 1-1 at PageID 14.) Plaintiffs' Complaint was filed in the Chancery Court of Shelby County, Tennessee on April 16, 2021. (*See* ECF No. 1-1 at PageID 10.) Thus, Plaintiffs' claims for invasion of privacy, intentional infliction of emotional distress, and assault are time barred because they were filed, at the earliest, more than two years after the conduct occurred.

In their Response to the Motions, Plaintiffs appear to concede Defendants' arguments regarding the statute of limitations on these claims, saying, "statute of limitations are conceded in

part as outlined by the Defendants. Especially, given the sphere that most allegations arose from 2018 or before as outlined by Plaintiff[s]." (ECF No. 25-1 at PageID 155.)

Other than the apparent concession outlined above, Plaintiffs did not respond to Defendants' arguments as to these claims. Because Plaintiffs have failed to respond to Defendants' Motions regarding these claims, they have abandoned them. *See Doe v. Bredesen*, 507 F.3d 998, 1007 (6th Cir. 2007).

Accordingly, for all the reasons set forth above, Defendants' Motions are **GRANTED** as to Plaintiffs' claims for invasion of privacy, intentional infliction of emotional distress, and assault.

B.    **Claim under Section One of the Sherman Antitrust Act**

Section One of the Sherman Act provides that:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 1.

Although it "literally prohibits every agreement 'in restraint of trade,'" *Arizona v. Maricopa County Med. Soc'y*, 457 U.S. 332, 342 (1982), the Supreme Court "has long recognized that Congress intended to outlaw only unreasonable restraints." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). Whether an agreement unreasonably restrains trade is determined under one of two approaches: (1) the *per se* rule, or (2) the rule of reason. *Worldwide Basketball and Sport Tours, Inc. v. National Collegiate Athletic Association*, 388 F.3d 955, 959 (6th Cir. 2004). "Except where courts have already carved out certain categories of offenses as proscribed *per se,* '[t]here is an

automatic presumption in favor of the rule of reason standard.'" *Expert Masonry, Inc. v. Boone Cnty., Ky.*, 440 F.3d 336, 342 (6th Cir. 2006) (citations omitted).

In *per se* cases, evidence of actual effect on competition is not required because these actions are conclusively presumed to be unreasonable. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984); *Northern Pacific Railway Company v. United States*, 356 U.S. 1, 5–6 (1958). A restraint on trade is *per se* illegal when "the practice facially appears to be one that would almost always tend to restrict competition and decrease output." *National Collegiate Athletic Assoc. v. Bd. of Regents of Univ. Of Oklahoma*, 468 U.S. 85, 100 (1984) (citations omitted). If a restraint is *per se* illegal, the plaintiff need show only that "(1) two or more entities engaged in a conspiracy, combination, or contract, (2) to effect a restraint or combination prohibited *per se* (wherein the anticompetitive effects within a relevant geographic and product market are implied), (3) that was the proximate cause of the plaintiff's antitrust injury." *Expert Masonry, Inc.*, 440 F.3d at 342 (internal citations omitted).

"In order to establish a *prima facie* case under the rule of reason, the plaintiff must prove (1) that the defendants contracted, combined, or conspired; (2) that the scheme produced anticompetitive effects; (3) that the restraint affected relevant product and geographic markets; (4) that the object of the scheme and the conduct resulting from it was illegal; and (5) that the scheme was a proximate cause of the plaintiff's antitrust injury." *Expert Masonry, Inc.*, 440 F.3d at 343 (internal citations omitted). Under the rule of reason approach, the court analyzes "the actual effect on competition in a relevant market to determine whether the conduct unreasonably restrains trade." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008). The "essence of the Section 1 rule of reason analysis is whether the challenged agreement is one that promotes competition or one that suppresses competition." *White & White,*

9

*Inc. v. Am. Hosp. Supply Corp.*, 723 F.2d 495, 505 (6th Cir. 1983) (citation omitted). "This query must be resolved by distinguishing between conduct that injures competition and that which may injure competitors." *Id.*

Here, Plaintiffs' Complaint sets forth only bare allegations that are insufficient to state a claim under either the *per se* or rule of reason standard. Plaintiffs do not identify any conduct, such as horizontal price fixing, that could constitute a restraint on trade that is *per se* illegal. Plaintiffs allege Defendants have "acted in combination or conspiracy," but fail to allege specific facts supporting this conclusion. Plaintiffs have also failed to identify a relevant market, and there are no facts from which this Court could infer that anticompetitive conduct by Defendants was the proximate cause of Plaintiffs' injury. In sum, Plaintiffs' allegations for their Sherman Antitrust Act claim are threadbare, conclusory, and fail to raise a right to relief above the speculative level.

Moreover, Plaintiffs did not respond to the arguments in Defendants' Motions for dismissal of their Sherman Antitrust Act claims. Again, because Plaintiffs have failed to respond to Defendants' Motions regarding this claim, they have abandoned it. *See Bredesen*, 507 F.3d at 1007.

For the foregoing reasons, Defendants' Motions are **GRANTED** as to Plaintiffs' Section One Sherman Antitrust Act claim.

C.   <u>**Claim for Conversion**</u>

In their Complaint, Plaintiffs allege Defendants "have converted or stolen . . . data for their own use and benefit." (ECF no. 1-1 at PageID 15.) Plaintiffs specifically allege that "circumstantial evidence suggests that [Plaintiffs'] 5G technology was converted to the Defendants['] use because of Plaintiff [5G]'s name . . . and because the data obtained indicated a new 5G technology that could operate in competition with all Defendants." (ECF No. 1-1 at

10

PageID 14.)  And although not expressly stated, Plaintiffs also indicate they believe a deodorant formula was stolen by "a former representative" of Defendant Google.  (*Id.*)

To establish a *prima facie* case for conversion, Plaintiffs "must prove: (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights."  *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012) (citing *Kinnard v. Shoney's, Inc.*, 100 F. Supp. 2d 781, 797 (M.D. Tenn. 2000) and *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977)).  However, Tennessee does not recognize a claim for conversion of intangible personal property or intellectual property.  *See Wells v. Chattanooga Bakery, Inc.*, 448 S.W.3d 381, 392 (Tenn. Ct. App. 2014); *Wachter, Inc. v. Cabling Innovations, LLC*, 387 F. Supp. 3d 830, 848 (M.D. Tenn. 2019).

In their Response, Plaintiffs concede that Tennessee law does not recognize a conversion claim for intangible personal property, but they argue that "in a digital world with the value of intellectual property increasing such reasoning no longer makes sense."  (ECF No. 1-1 at PageID 151.)  Continuing, Plaintiffs assert that they "make[] a good faith argument here that the law should be changed going forward to recognize the rights and ownership of intangible property."  (*Id.*)

Plaintiffs' argument falls flat.  Numerous state and federal laws provide protections for intangible personal property or intellectual property.  Just because Plaintiffs would rather proceed under a theory of conversion does not mean these laws are insufficient to recognize and protect ownership rights of intangible personal property in this "digital world."  Moreover, even if Plaintiffs' arguments had merit, it is not for this Court to decide what it believes the law in Tennessee should be—it is this Court's job to call balls and strikes.  *See, e.g.*, *West v. Kty. Horse*

11

*Racing Comm'n*, 972 F.3d 881, 889 (6th Cir. 2020) (citing *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1724 (2020)).

Plaintiffs' claim for conversion fails as a matter of law because Tennessee does not recognize a conversion claim for intangible personal property or intellectual property. Defendants' Motions are thus **GRANTED** as to Plaintiffs' conversion claim.

D.     **Claim for Race Discrimination under 42 U.S.C. § 1981**

Intentional race discrimination is prohibited under 42 U.S.C. § 1981 in the "'making and enforcing of contracts involving both public and private actors,' including 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Johnson v. Fed. Express Corp.*, No. 2:14-cv-02511-STA-dkv, 2015 WL 6018691, at *13 (W.D. Tenn. Oct. 14, 2015) (quoting *Amini v. Oberlin*, 400 F.3d 350, 358 (6th Cir. 2006)). To state claim under § 1981 in a non-employment context, a plaintiff must demonstrate that:

> (1) plaintiff is a member of a protected class; (2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and (3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Briscoe v. Jackson*, 285 F. App'x 205, 208 (6th Cir. 2008) (citing *Christian v. Wal–Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001)).

The allegations in Plaintiffs' Complaint fall short of stating a claim under § 1981. Although Plaintiffs allege facts necessary to satisfy the first element of a non-employment § 1981 claim, Plaintiffs do not allege facts necessary to support the second two elements. Plaintiffs allege they were denied advertising and marketing opportunities and that Defendants refused to show a logo on their websites, but it is not clear from the Complaint that Defendants ordinarily provide

12

such services.  (*See* ECF No. 1-1 at PageID 17–18.)  In addition, Plaintiffs do not allege that similarly situated others outside of Plaintiffs' protected class were not denied the right to enter into or enjoy the benefits of a similar contractual relationship with any Defendant, or that Plaintiffs received services in a markedly hostile manner that a reasonable person would find objectively discriminatory.  Because of these deficiencies, Plaintiffs have failed to state a claim for race discrimination under § 1981, and Defendants' Motions are **GRANTED** as to Plaintiffs' § 1981 race discrimination claim.

E. **Breach of Contract**

In their Response, Plaintiffs assert a new claim not expressly put forth in their Complaint: breach of contract.  (*See* ECF No. 25-1 at PageID 150–51.)  Plaintiffs, however, may not assert a new claim for the first time in response to a motion to dismiss. *See Faber v. Smith*, No. 17-2523, 2018 WL 6918704, at *2 (6th Cir. June 6, 2018) ("Faber, however, did not raise any of these claims in the district court until he filed responses to Smith's motion to dismiss. A plaintiff cannot raise new legal claims in response to a dispositive motion filed by the defendant."); *Johnson v. Int'l Labs., LLC*, No. 7:19-CV-0004-GFVT, 2019 WL 1877289, at *2 n. 2 (E.D. Ky. Apr. 26, 2019) (declining to consider argument raised for first time in reply to motion to dismiss); *Richter v. Seterus, Inc.*, No. 15-CV-12874, 2016 WL 8200520, at *2 (E.D. Mich. May 16, 2016) ("A response to a motion to dismiss is the improper forum for asserting a new claim*."); see also Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (plaintiffs cannot "amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint") (citations omitted).

But even if Plaintiffs had included a claim for breach of contract in the Complaint, the facts alleged in the Complaint fail to support that claim. "The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (quoting *Custom Built Homes v. G.S. Hinsen Co., Inc.*, 1998 WL 960287 (Tenn. Ct. App. Feb. 2, 1998)).

Plaintiffs' Complaint alleges they had contracts on smart phones with Defendant Sprint, but it does not allege specific facts as to Defendant Sprint's nonperformance amounting to a breach of those contracts. (*See* ECF No. 1-1 at PageID 13.) Later, Plaintiffs allege they "directly or implicitly had contracts with Defendants for telecommunications service, Internet service or presence, and for the ability to transmit and disseminate information for a profit." (*Id.* at PageID 18.) And that "Plaintiffs had a contract with all Defendants implicitly or explicitly, or existed in a world in which ever-changing 'terms of service' never allowed data to be shared to restrict or prohibit competition." (*Id.* at PageID 19.) These vague allegations are insufficient to state a breach of contract claim. Plaintiffs do not attach a copy of any of the alleged contracts nor do they specify the contractual terms they claim were breached. *See Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012) (stating "[i]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached.") (citation omitted). As in *Northampton*, Plaintiffs here were "required to allege facts sufficient to make [their] breach-of-contract claim plausible on its face, and without the contract[ ] or reference to specific language, [Plaintiffs] [have] failed to put forth a plausible claim for relief." *See id.*

14

F.	**Leave to Amend the Complaint**

In their Response to Defendants' Motions, Plaintiffs argue that "leave should be granted for an amendment that specifically addresses any defect alleged by the Defendants—if Plaintiff[s] can." (ECF No. 25-1 at PageID 152.)  Later, after conceding some claims and acknowledging their abandonment of others, Plaintiffs state that they "intend[] forthwith to file amendments as to all unabandoned claims." (*Id.* at PageID 155.)  To date, however, Plaintiffs have not sought leave to amend their Complaint.

Federal Rule of Civil Procedure 15 provides "that leave to amend shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

> In the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. the leave sought should, as the rules require, be "freely given."

*Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

While Rule 15 is undoubtedly pro-amendment, a request for leave to amend "almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend." *La. Sch. Emps.' Ret. Sys. V. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000)); *see also Bunn v. Navistar, Inc.*, 797 F. App'x 247, 257 (6th Cir. 2020); *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004). As the court in *Begala v. PNC Bank* stated:

> Had plaintiffs filed a motion to amend the complaint prior to the Court's consideration of the motions to dismiss and accompanied that motion with a memorandum identifying the proposed amendments, the Court would have considered the motions to dismiss in light of the proposed amendments to the complaint … Absent such a motion, however, Defendant was entitled to a review of the complaint as filed pursuant to Rule 12(b)(6). *Plaintiffs were not entitled to*

15

> *an advisory opinion from the Court informing them of the deficiencies* of the complaint and then an opportunity to cure those deficiencies.

*Begala*, 214 F.3d at 784 (quoting the district court and affirming the decision to deny leave to amend) (emphasis in original).

So too here. Plaintiffs have not filed a motion to amend their Complaint, and absent such a motion, Defendants are entitled to a review and analysis of their Motions and the Complaint as filed. Granting Plaintiffs leave to amend at this juncture would amount to giving Plaintiffs an advisory opinion on the Complaint's deficiencies. The Court is disinclined to acquiesce to Plaintiffs' (non)request. Thus, to the extent Plaintiffs' mentions of amending their Complaint can be construed as a request for leave to amend, that request is **DENIED**.

## CONCLUSION

For the reasons set forth above, (1) Defendant Microsoft Corporation's Motion to Dismiss filed July 2, 2021 (ECF No. 17) is **GRANTED**; (2) Defendants Sprint Communications Company, L.P. and Apple Inc.'s Motion to Dismiss filed July 2, 2021 (ECF No. 20) is **GRANTED**; (3) Defendant Facebook Payments Inc.'s Motion to Dismiss filed July 2, 2021 (ECF No. 21) is **GRANTED**; and (4) Defendant Google LLC's Motion to Dismiss filed July 9, 2021 (ECF No. 22) is **GRANTED**. Leave to amend is **DENIED**.

**IT IS SO ORDERED**, this 14th day of March, 2022.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE